1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          CENTRAL DISTRICT OF CALIFORNIA

10

11    R.F.,                                    Case No. 5:20-cv-00021-SHK

12                          Plaintiff,

13              v.                             OPINION AND ORDER

14    ANDREW SAUL, Commissioner of
      Social Security,
15
                            Defendant.
16

17

18          Plaintiff R.F.[1] ("Plaintiff") seeks judicial review of the final decision of the

19    Commissioner of the Social Security Administration ("Commissioner,"

20    "Agency," or "Defendant") denying his application for disability insurance

21    benefits ("DIB"), under Title II of the Social Security Act (the "Act").  This

22    Court has jurisdiction under 42 U.S.C. § 405(g), and, pursuant to 28 U.S.C.

23    § 636(c), the parties have consented to the jurisdiction of the undersigned United

24    States Magistrate Judge.  For the reasons stated below, the Commissioner's

25    decision is REVERSED and this action is REMANDED for further proceedings

26    consistent with this Order.

27    _____

28    [1] The Court substitutes Plaintiff's initials for Plaintiff's name to protect Plaintiff's privacy with
      respect to Plaintiff's medical records discussed in this Opinion and Order.

## I.    BACKGROUND

Plaintiff filed an application for DIB on March 2, 2015, alleging disability beginning on June 1, 2014.  Transcript ("Tr.") 15, 180-86.[2]  Following a denial of benefits, Plaintiff requested a hearing before an administrative law judge ("ALJ") and, on December 19, 2018, ALJ Josephine Arno determined that Plaintiff was not disabled.  Tr. 15-26.  Plaintiff sought review of the ALJ's decision with the Appeals Council, however, review was denied on November 5, 2019.  Tr. 1-6.  This appeal followed.

## II.    STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted).  In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions."  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

"'When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ.'" Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting Batson, 359 F.3d at 1196); see also Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) ("If the ALJ's credibility finding is supported by substantial evidence in the record, [the Court] may not engage in second-guessing.") (citation omitted).  A reviewing

---

[2] A certified copy of the Administrative Record was filed on June 1, 2020.  Electronic Case Filing Number ("ECF No.") 16.  Citations will be made to the Administrative Record or Transcript page number rather than the ECF page number.

2

court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). Finally, a court may not reverse an ALJ's decision if the error is harmless. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

## III.   DISCUSSION

### A.   Establishing Disability Under The Act

To establish whether a claimant is disabled under the Act, it must be shown that:

> (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and

> (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)). "If a claimant meets both requirements, he or she is 'disabled.'" Id.

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." Tackett, 180 F.3d at 1098; 20 C.F.R. § 404.1520. The claimant carries the burden of proof at steps

1    one through four, and the Commissioner carries the burden of proof at step five.

2    Tackett, 180 F.3d at 1098.

3        The five steps are:

4            Step 1. Is the claimant presently working in a substantially gainful

5    activity [("SGA")]? If so, then the claimant is "not disabled" within

6    the meaning of the [] Act and is not entitled to [DIB]. If the claimant is

7    not working in a [SGA], then the claimant's case cannot be resolved at

8    step one and the evaluation proceeds to step two. See 20 C.F.R.

9    § 404.1520(b).

10            Step 2. Is the claimant's impairment severe? If not, then the

11    claimant is "not disabled" and is not entitled to [DIB]. If the claimant's

12    impairment is severe, then the claimant's case cannot be resolved at

13    step two and the evaluation proceeds to step three. See 20 C.F.R.

14    § 404.1520(c).

15            Step 3. Does the impairment "meet or equal" one of a list of

16    specific impairments described in the regulations? If so, the claimant is

17    "disabled" and therefore entitled to [DIB]. If the claimant's

18    impairment neither meets nor equals one of the impairments listed in

19    the regulations, then the claimant's case cannot be resolved at step

20    three and the evaluation proceeds to step four. See 20 C.F.R.

21    § 404.1520(d).

22            Step 4. Is the claimant able to do any work that he or she has

23    done in the past? If so, then the claimant is "not disabled" and is not

24    entitled to [DIB]. If the claimant cannot do any work he or she did in

25    the past, then the claimant's case cannot be resolved at step four and

26    the evaluation proceeds to the fifth and final step. See 20 C.F.R.

27    § 404.1520(e).

28

Step 5.  Is the claimant able to do any other work?  If not, then the claimant is "disabled" and therefore entitled to [DIB].  See 20 C.F.R. § 404.1520(f)(1).  If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do.  There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2.  If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to [DIB].  See 20 C.F.R. §§ 404.1520(f), 404.1562.  If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to [DIB].  See id.

Id. at 1098-99.

### B.   Summary Of ALJ's Findings

The ALJ determined that "[Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2019."  Tr. 17.  The ALJ then found at step one, that "[Plaintiff] has not engaged in [SGA] since June 1, 2014, the alleged onset date (20 CFR 404.1571 et seq.)."  Id.  At step two, the ALJ found that Plaintiff has the following severe impairments: "degenerative disc disease of the cervical spine, status post discectomy and fusion; degenerative disc disease of the lumbar spine with stenosis, status post fusion; peripheral neuropathy; carpel tunnel syndrome; aortic stenosis; heart failure; status post left ulnar nerve transposition; and chronic pain (20 CFR 404.1520(c))."  Id.  At step three, the ALJ found that "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)."  Tr. 19.

1    In preparation for step four, the ALJ found that Plaintiff has the residual
2  functional capacity ("RFC") to:

3          perform light work as defined in 20 CFR 404.1567(b) except [Plaintiff]
4          is able to stand or walk for a total of four hours in an eight hour workday;
5          is able to sit for a total of six hours in an eight hour workday; is never
6          able to climb ladders, ropes, or scaffolds; may occasionally climb ramps
7          or stairs; may occasionally balance, stoop, kneel, crouch and crawl; is
8          able to frequently reach overhead with the non-dominant left upper
9          extremity; is able to occasionally feel with the left upper extremity; may
10         have no exposure to unprotected heights and moving mechanical parts;
11         and may have no concentrated exposure to fumes, odors, dust, gases
12         and poor ventilation.

13  Tr. 19-20.  The ALJ then found, at step four, that "[Plaintiff] is unable to
14  perform any past relevant work (20 CFR 404.1565)."  Tr. 24.

15    In preparation for step five, the ALJ noted that "[Plaintiff] was born on July
16  14, 1966 and was 47 years old, which is defined as a younger individual age 18-49,
17  on the alleged disability onset date.  [Plaintiff] subsequently changed age category
18  to closely approaching advanced age (20 CFR 404.1563."  Id.  The ALJ observed
19  that "[Plaintiff] has at least a high school education and is able to communicate in
20  English (20 CFR 404.1564)."  Id.  The ALJ then added that "[t]ransferability of
21  job skills is not material to the determination of disability because using the
22  Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not
23  disabled,' whether or not [Plaintiff] has transferable job skills (See SSR 82-41 and
24  20 CFR Part 404, Subpart P, Appendix 2)."  Id.

25    At step five, the ALJ found that "[c]onsidering [Plaintiff's] age, education,
26  work experience, and [RFC], there are jobs that exist in significant numbers in the
27  national economy that [Plaintiff] can perform (20 CFR 404.1569, 404.1569[(]a))."

28

1   Id. Specifically, the ALJ found that Plaintiff could perform the "light, unskilled"
2   occupations of:

- "Production assembler," as defined in the dictionary of occupational titles
  ("DOT") at DOT 706.687-010, which the ALJ found had "58,000 such
  positions in the national economy after erosion of 50 percent due to the
  limitation regarding standing and walking";

- "Marker II, DOT 920.687-126," which the ALJ found had "27,000 such
  positions in the national economy after erosion of 50 percent due to the
  limitation regarding standing and walking"; and

- "Assembler, electrical accessories, DOT 729.687-010," which the ALJ
  found had "20,000 such occupations in the national economy after erosion
  of 50 percent due to the limitation regarding standing and walking." Tr. 25.

13      The ALJ based her decision that Plaintiff could perform the aforementioned
14  occupations "on the testimony of the [VE]" from the administrative hearing, after
15  "determin[ing] that the [VE's] testimony [wa]s consistent with the information
16  contained in the [DOT]." Id. The ALJ, therefore, found that "[Plaintiff] has not
17  been under a disability, as defined in the . . . Act, from June 1, 2014, through
18  [December 19, 2018], the date of th[e] decision (20 CFR 404.1520(g))." Id.

19      **C.   Issues Presented**

20      In this appeal, Plaintiff raises two issues, whether the ALJ: (1) properly
21  rejected the opinions of two of his doctors; and (2) properly rejected his subjective
22  symptom statements. ECF No. 19, Joint Stip. at 5. The Court finds that the first
23  issue is dispositive and so it begins and ends its analysis there. However, before
24  addressing the dispositive issue, the Court first addresses one initial matter of the
25  ALJ's step five finding that was not addressed by the parties.

26      **1.   Initial Matter Of The ALJ's Evaluation At Step Five**

27      As an initial matter, the Court observes that the ALJ erred at step five of the
28  sequential evaluation process. Specifically, the ALJ found that there were 58,000;

7

27,000; and 20,000 jobs available in the national economy that Plaintiff could perform in the three aforementioned occupations, based on the testimony of the VE from the administrative hearing "after erosion of 50 percent due to the limitation regarding standing and walking."  Tr. 24.  The ALJ's finding, however, is not supported by the VE's testimony because the VE testified that there were fewer jobs available in each of the three aforementioned occupations.  Specifically, the VE testified that there were:

- "15,000 jobs estimated in the national economy" for the Production assembler occupation, but "[t]hat number would reduce by half to account for the preference of seated work";
- "27,000 jobs estimated in the national economy" for the Marker II occupation, but that "[s]imilarly, that number would be halved"; and
- "20,000 jobs estimated in the national economy" for the Assembler, electrical accessories occupation, but that the number of nationally available positions that Plaintiff could perform would "also [be] reduced by half."

Tr. 49.

Thus, pursuant to the VE's testimony, there were 31,000 jobs available in the national economy[3] that Plaintiff could perform, not 105,000 available jobs[4] as the ALJ found.  Accordingly, the ALJ's step five finding that Plaintiff was not disabled because there were 105,000 jobs in the national economy that Plaintiff could perform, as evidenced by the VE's testimony, was erroneous because the VE opined that there were only 31,000 jobs available nationally that Plaintiff could perform, some 74,000 fewer than the ALJ found at step five.

/ / /

---

[3] 15,000+27,000+20,000=62,000 jobs, reduced by fifty percent because of Plaintiff's limited ability to stand is 31,000 jobs.

[4] 58,000+27,000+20,000=105,000 jobs.

The Court finds, however, the ALJ's error at step five was harmless because the Ninth Circuit has found that 25,000 jobs available nationally—although a "close call"—represents a significant number of jobs and the VE's testimony indicates that there are 31,000 jobs nationally available that Plaintiff can perform. See Gutierrez, 740 F.3d at 519, 528-29 (25,000 jobs nationally available presents a "close call" as to whether work exists in significant numbers nationally).

Moreover, an inspection of the DOT descriptions of the jobs the ALJ found Plaintiff could perform at step five reveals that two of the occupations list activities that appear contrary to Plaintiff's RFC. Specifically, the ALJ found, in pertinent part, that Plaintiff had the RFC to have "no exposure to . . . moving mechanical parts . . . [or] dust[.]" Tr. 20. However, the description of the job duties in the DOT for the "Assembler, Production" occupation at DOT 706.687-010 instructs that workers in that occupation "[m]ay tend machines, such as arbor presses or riveting machine[s], to perform force fitting or fastening operations."[5] The occupational necessity to use arbor pressing and riveting machines appears contrary to Plaintiff's inability to be exposed to moving mechanical parts in Plaintiff's RFC.

Further, the description of the job duties in the DOT for the Marker II occupation instructs that workers in that occupation "[m]ark[] or affix[] trademarks or other identifying information, . . . using one or more methods, such as . . . sand-grit and stencil[.]"[6] The occupational necessity to work with "sand-grit" appears contrary to Plaintiff's inability to be exposed to dust.

Thus, it appears to the Court that these occupational hazards would likely erode the number of nationally available jobs that Plaintiff could perform below the

_____

[5] See Dictionary of Occupational Titles, Assembler, Production, https://occupationalinfo.org/70/706687010.html (last accessed December 10, 2020).

[6] See Dictionary of Occupational Titles, Marker II, https://occupationalinfo.org/92/920687126.html (last accessed December 10, 2020).

1    already, corrected 31,000 positions the VE opined were available because the VE

2    did not make any reductions to account for these inconsistencies and instead

3    testified that there were "[n]o inconsistencies" between the VE's testimony and

4    the DOT and the ALJ found the same.  Tr. 25, 51.

5         However, because it is unclear how many fewer positions would be available

6    to Plaintiff as a result of the apparent above discussed occupational hazards,

7    because the parties failed to identify and brief this issue, and because the Court

8    finds that remand for further proceedings is appropriate for the reasons discussed

9    next, the Court does not remand as to this issue.  Nevertheless, on remand, the

10   ALJ shall consider and discuss: (1) the discrepancy between the number of jobs the

11   VE testified were available for Plaintiff to perform and the number of jobs the ALJ

12   found Plaintiff could perform at step five; and (2) whether there is a conflict

13   between the job duties for the two aforementioned occupations as outlined in the

14   DOT and whether Plaintiff has the RFC to perform those duties and, if so, whether

15   that conflict warrants a further reduction in the number of nationally available jobs

16   that Plaintiff can perform.  The Court turns next to the dispositive first issue raised

17   by Plaintiff of whether the ALJ properly rejected the opinions of two of his doctors.

18        **D.    Court's Consideration Of Plaintiff's First Issue**

19        Plaintiff argues that the ALJ failed to articulate specific and legitimate

20   reasons for rejecting the opinions of his treating physician Dr. Albert Retodo, M.D.

21   and examining physician Dr. Martha Singer, M.D.  ECF No. 19, Joint Stip. at 5-10.

22   The Court finds that the ALJ's reasons for rejecting Dr. Singer's opinion was not

23   specific and legitimate and, thus, focuses on this issue below.

24        **1.    Dr. Singer's Opinion**

25        On March 18, 2016, Dr. Singer performed a qualified medical evaluation of

26   Plaintiff and rendered an opinion as to Plaintiff's limitations at that time.  Tr. 694-

27   708.  In her examination notes, Dr. Singer noted that she had previously evaluated

28   Plaintiff in January 2015 after Plaintiff had two cervical spine surgeries in February

and December 2014 and after Plaintiff's alleged disability onset in June 2014, but before Plaintiff had a lower back surgery in June 2015.  Tr. 696.

Dr. Singer noted that during her seventy-five-minute examination of Plaintiff in March 2016, Plaintiff reported pain and tenderness in his neck, left scapular area, left pectoral area, left elbow, and left forearm, and that Plaintiff also reported numbness in his left hand.  Tr. 694-95, 697.  Dr. Singer noted that Plaintiff "describes the problem as neck pain 100% of the time and left arm pain 100% of the time" and that Plaintiff further indicated that his "left side is not much improved after his second cervical spine surgery."  Tr. 697.

Dr. Singer's examination notes indicate that Plaintiff presented with:

- "a mild bilateral tremor when holding his hands out";
- tenderness in Plaintiff's supraspinatus area bilaterally;
- "discomfort" in the left pectoralis area;
- "essentially absent reflexes of the upper extremities";
- "some supraspinatus atrophy bilaterally and, perhaps, some pectoralis atrophy on the left side";
- "positive Tinel's on the right"; and
- "some loss of range of motion of the cervical spine."

Tr. 697, 699.

Dr. Singer then assessed Plaintiff's cervical range of motion as follows:

- Cervical flexion is 60 degrees;
- Extension is 20 degrees;
- Lateral bend to the right is 33 degrees; and
- Lateral bend to the left is 25 degrees.

Tr. 698.  Dr. Singer indicated that Plaintiff "describes more pain wit[h] left-sided lateral bend" and that Plaintiff indicated pain in "the back of the neck."  Id.  Dr. Singer also indicated that Plaintiff's supine rotation was measured at seventy degrees to the right and sixty degrees to the left.  Id.

After discussing the pertinent findings contained in over thirty of Plaintiff's medical records from during the relevant timer period, as well as explaining the procedures used in, and the outcomes of, Plaintiff's multiple cervical surgeries Dr. Singer provided an opinion regarding Plaintiff's limitations cause by his impairments.  Tr. 699-705.  Specifically, Dr. Singer opined that "[f]or the neck itself, work preclusions would include activities that involve prolonged work at or above shoulder level, weightbearing on the head and neck," "repetitive neck motions or prolonged neck extension[,]" and "a lifting restriction of 20 pounds on a regular basis would be reasonable."  Tr. 705, 708.

### 2.    ALJ's Partial Rejection Of Dr. Singer's Opinion

The ALJ first discussed the lifting limitation endorsed by Dr. Singer and found that Dr. Singer "opined [Plaintiff] could not lift or carry more than 20 pounds, which is reasonable in light of [Plaintiff's] history of cervical and lumbar surgery as well as his complaints of pain."  Tr. 23.

The ALJ, however, did "not give great weight" to Dr. Singer's "opinion that [Plaintiff] could not bend or twist at the neck, perform repetitive neck motions, or perform activities at or above shoulder level is too extreme in light of the objective medical findings in the record" for two reasons.  Id.  First, the ALJ explained that "the record indicates that [Plaintiff's] condition improved following his cervical spine surgery in December 2014, but he continues to have diminished range of motion in the cervical spine with some muscle spasms."  Id. (citing Tr. 400, 408, 411, 687).  Second, the ALJ reasoned that Plaintiff's "neurological symptoms waxed and waned."  Id. (citing Tr. 1333, 1339).

### 3.    Parties' Arguments

As discussed above, Plaintiff argues that the ALJ improperly rejected Dr. Singer's opinion because the reasons the ALJ provided for rejecting her opinion were not specific and legitimate.  ECF No. 19, Joint Stip. at 9.

Defendant responds that "[t]he ALJ provided specific and legitimate reasons explaining why she concluded that Plaintiff's RFC best comported with the weight of the evidence. Id. at 11 (citing Tr. 18-24). After citing various medical records, Defendant asserts that "[t]he ALJ properly synthesized the conflicting medical evidence into Plaintiff's RFC for a reduced range of light work, subject to additional postural, manipulative, and environmental limitations" and that "Plaintiff's longitudinal treatment records showed he experienced significant improvement in symptoms, including pain, with treatment." Id. at 11-13 (citations omitted). Defendant concludes that "Plaintiff's request for reversal and/or remand should be denied, and the Commissioner's final decision should be affirmed." Id. at 17.

### 4. Legal Standards

#### a. Evaluating Medical Evidence

The Social Security Administration evaluates medical evidence "according to the rules pertaining to the relevant category of evidence." 20 C.F.R. § 404.153(a). The categories of evidence are: (1) objective medical evidence; (2) medical opinions; (3) other medical evidence; (4) evidence from non-medical sources; and (5) evidence from a prior medical finding. Id.

"Objective medical evidence" includes "medical signs, laboratory findings, or both, as defined in § 404.1502(f)." Id. at § 404.1513(a)(1). By contrast, a "medical opinion" is:

> a statement from a medical source about what [a claimant] can still do despite [their] impairment(s) and whether [they] have one or more impairment-related limitations or restrictions in the following abilities:
>
> (i) [An] ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

13

1              (ii) [An] ability to perform mental demands of work activities,

2     such as understanding; remembering; maintaining concentration,

3     persistence, or pace; carrying out instructions; or responding

4     appropriately to supervision, co-workers, or work pressures in a work

5     setting;

6              (iii) [An] ability to perform other demands of work, such as

7     seeing, hearing, or using other senses; and

8              (iv) [An] ability to adapt to environmental conditions, such as

9     temperature extremes or fumes.

10   Id. at § 404.1513(a)(2).

11              *b.*    *Evaluating Medical Opinions*

12      There are three types of medical opinions in Social Security cases: those

13   from treating physicians, examining physicians, and non-examining physicians.

14   Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009) (citation

15   omitted).  "The medical opinion of a claimant's treating physician is given

16   'controlling weight' so long as it 'is well-supported by medically acceptable clinical

17   and laboratory diagnostic techniques and is not inconsistent with the other

18   substantial evidence in [the claimant's] case record.'"  Trevizo v. Berryhill, 871

19   F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)).  "When a

20   treating physician's opinion is not controlling, it is weighted according to factors

21   such as the length of the treatment relationship and the frequency of examination,

22   the nature and extent of the treatment relationship, supportability, consistency

23   with the record, and specialization of the physician."  Id. (citing 20 C.F.R.

24   § 404.1527(c)(2)–(6)).

25      "'To reject [the] uncontradicted opinion of a treating or examining doctor,

26   an ALJ must state clear and convincing reasons that are supported by substantial

27   evidence.'"  Id. (quoting Ryan v. Comm'r Soc. Sec. Admin., 528 F.3d 1194, 1198

28   (9th Cir. 2008)).  "This is not an easy requirement to meet: 'the clear and

1   convincing standard is the most demanding required in Social Security cases.'"

2   Garrison v. Colvin, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting Moore v. Comm'r

3   Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)).

4        "'If a treating or examining doctor's opinion is contradicted by another

5   doctor's opinion, an ALJ may only reject it by providing specific and legitimate

6   reasons that are supported by substantial evidence.'"   Trevizo, 871 F.3d at 675

7   (quoting Ryan, 528 F.3d at 1198).   "This is so because, even when contradicted, a

8   treating or examining physician's opinion is still owed deference and will often be

9   'entitled to the greatest weight . . . even if it does not meet the test for controlling

10  weight.'"  Garrison, 759 F.3d at 1012 (quoting Orn v. Astrue, 495 F.3d 625, 633

11  (9th Cir. 2007)).  "'The ALJ can meet this burden by setting out a detailed and

12  thorough summary of the facts and conflicting clinical evidence, stating his

13  interpretation thereof, and making findings.'"  Trevizo, 871 F.3d at 675 (quoting

14  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

15              *c.*   *RFC Finding*

16       The RFC is the maximum a claimant can do despite her limitations.  20

17  C.F.R. §§ 404.1545, 416.945.  In determining the RFC, the ALJ must consider

18  limitations imposed by all of a claimant's impairments, even those that are not

19  severe, and evaluate all of the relevant medical and other evidence, including the

20  claimant's testimony.  SSR 96-8p, available at 1996 WL 374184.  The ALJ is

21  responsible for resolving conflicts in the medical testimony and translating the

22  claimant's impairments into concrete functional limitations in the RFC.  Stubbs-

23  Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008).  Only limitations

24  supported by substantial evidence must be incorporated into the RFC and, by

25  extension, the dispositive hypothetical question posed to the Vocational Expert.

26  Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

27  / / /

28  / / /

15

1          **5.      Analysis**

2          As an initial matter, the Court observes that the ALJ rejected only Dr.

3   Singer's opinion that "work preclusions" stemming from Plaintiff's neck "would

4   include activities that involve prolonged work at or above shoulder level,

5   weightbearing on the head and neck," and "repetitive neck motions or prolonged

6   neck extension[,]" but that the ALJ took no issue with the lifting limitations Dr.

7   Singer endorsed. Tr. 705, 708. As such, the sole issue for the Court is to

8   determine whether the ALJ's rejection Dr. Singer's opinion regarding Plaintiff's

9   neck related limitations was supported by substantial evidence in the record.

10          As a secondary matter, the Court observes that the ALJ discussed only

11   objective medical evidence that the ALJ found contradictory to Dr. Singer's

12   opinion, but the ALJ did not identify or discuss any doctor's opinion that

13   specifically contradicted the aforementioned neck related limitations endorsed by

14   Dr. Singer. Therefore, the Court finds that the specific and legitimate standard

15   applies here. Trevizo, 871 F.3d at 675. The Court finds, however, that neither of

16   the reasons provided by the ALJ for partially rejecting Dr. Singer's opinion meet

17   this standard, or even the clear and convincing standard for the following reasons.

18          First, the ALJ overstated the limitations Dr. Singer endorsed and, thus, the

19   ALJ rejected opinions that Dr. Singer did not actually endorse. Specifically, Dr.

20   Singer did not opine "that [Plaintiff] could not bend or twist at the neck" as the

21   ALJ stated. Tr. 23. Rather, Dr. Singer opined that Plaintiff could not perform

22   "repetitive neck motions or prolonged neck extension." Tr. 705, 708. Thus, the

23   ALJ's rejection of Dr. Singer's opinion establishes only that the ALJ believes that

24   an absolute bar from "bend[ing] or twist[ing] at the neck" is "too extreme [a

25   limitation] in light of the objective evidence in the record." Tr. 23. However, an

26   absolute bar from bending and twisting at the neck is not what Dr. Singer endorsed.

27   Rather, Dr. Singer's opinion was that Plaintiff must avoid only "repetitive" and

28   "prolonged" neck movements. Tr. 705, 708. Thus, the ALJ rejected only an

opinion that Dr. Singer did not actually endorse and not Dr. Singer's actual opinion. As such, the ALJ's finding was not supported by the record and was, therefore, not a clear and convincing or even a specific and legitimate reason to reject Dr. Singer's actual opinion.

Similarly unpersuasive was the ALJ's rejection of Dr. Singer's opinion that Plaintiff could not "perform activities at or above shoulder level" because such a limitation "is too extreme in light of the objective medical findings in the record." Tr. 23. Again, Dr. Singer did not opine that Plaintiff could not perform all activities at or above his shoulders. Rather, the record reveals that Dr. Singer opined that Plaintiff could not perform "<u>prolonged</u> work at or above shoulder level." Tr. 705, 708 (emphasis added). Thus, Dr. Singer opined that Plaintiff can perform some work at or above shoulder level, but not "prolonged" work in this fashion, whereas the ALJ assessed only whether Plaintiff could perform any work in this fashion. <u>Id.</u> As such, the ALJ rejected another opinion that Dr. Singer did not actually endorse. Therefore, the ALJ's finding was not supported by the record and was, consequently, not a clear and convincing or even a specific and legitimate reason to reject Dr. Singer's actual opinion.

Second, the ALJ relied on only some evidence in the record to support her partial rejection of Dr. Singer's opinion, while ignoring other evidence that supports Dr. Singer's opinion. <u>See</u> <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others). For example, the ALJ cited four pages in Plaintiff's medical records for the proposition that "the record indicates that [Plaintiff's] condition improved following his cervical spine surgery in December 2014," despite evidence that Plaintiff "continues to have diminished range of motion in the cervical spine with some muscle spasms." <u>Id.</u> (citing Tr. 400, 408, 411, 687).

However, an inspection of the medical records cited by the ALJ, indicates that Plaintiff still had pain, numbness, and spasms after his surgeries that were

severe enough for Plaintiff to seek additional surgery and physical therapy, and for Plaintiff's doctors to continue prescribing Plaintiff opioid pain killers and muscle relaxers.  For example, Plaintiff's medical records in the page range cited by the ALJ indicate that, following Plaintiff's surgeries, Plaintiff:

- Suffered from "chronic" neck, left shoulder, and low back pain for which Plaintiff is prescribed the opioid pain reliever Norco and the opioid muscle relaxer Baclofen;

- Suffered from "chronic left shoulder pain with left upper extremity weakness after surgical procedure many years ago.  [Plaintiff] wants to go to physical therapy for rehab of his left shoulder and left upper extremity to try to reduce the pain and increase the range of motion and muscle tone.  Will do referral to physical therapy";

- Suffered from "some fingerpad [sic] numbness of the thumb and pointer finger" and Plaintiff was reportedly "still taking baclofen and Neurontin. His other complaint is back pain" and his back "occasionally locks up on him";

- Reported that the "pads on his thumb and first finger still feel numb" and Plaintiff reportedly "did ask about his back stating that he is wondering, if he qualifies for back surgery" because his back "occasionally locks up on him and [he] feels a crunching with twisting" and "severe pain when it does lock up";

- Presented with "palpation of the cervical paraspinals reveals moderate C6-7 paraspinal muscle spasms" and "Palpation of the bilateral trapezius are mildly tender";

- Presented with a "4/5 weakness of [the] left shoulder abduction, left elbow flexion, left elbow extension, left wrist extension, and bilateral finger abduction" was noted; and

1          • Presented with "decreased Wartengerg pinwheel sensation in bilateral
2             hands with the right hand more decreased sensation than the left hand."
3  Tr. 400, 402-03, 408-09, 411, 687 (capitalization normalized).

4          Moreover, many of Plaintiff's symptoms noted above that the ALJ did not
5  consider or discuss were consistent with the symptoms Dr. Singer noted in her
6  examination notes, which the ALJ also did not consider or discuss.  For example,
7  Dr. Singer noted pain and tenderness in Plaintiff's neck, left scapular area, left
8  pectoral area, left elbow, and left forearm, and noted that Plaintiff also reported
9  numbness in his left hand.  Tr. 694-95, 697.  Dr. Singer's examination notes also
10 indicated that Plaintiff presented with shaky hands; tenderness, discomfort, and
11 atrophy in Plaintiff's supraspinatus area bilaterally, and left pectoralis area;
12 "essentially absent reflexes of the upper extremities"; and "positive Tinel's on the
13 right."  Tr. 697, 699.

14         Accordingly, the ALJ failed to consider or discuss the above evidence when
15 rejecting Dr. Singer's opinion due to indications that Plaintiff's condition improved
16 following Plaintiff's December 2014 surgery.  Because much of this evidence was
17 consistent with the evidence the ALJ did not consider or discuss in Dr. Singer's
18 opinion, the ALJ's rejection of Dr. Singer's opinion due to Plaintiff's purported
19 improvement following his December 2014 surgery was not a clear and convincing
20 or even a specific and legitimate reason to reject Dr. Singer's opinion.

21         Similarly, the ALJ's rejection of Dr. Singer's opinion because Plaintiff's
22 "neurological symptoms waxed and waned" fails because the ALJ again selectively
23 relied on only some evidence in the record when making this finding.  Tr. 23 (citing
24 Tr. 1333, 1339).  For example, in the two pages cited by the ALJ in support of the
25 proposition that Plaintiff's symptoms waxed and waned, the ALJ ignored notations
26 that in June and July of 2017, when the examinations correlating with those records
27 took place, Plaintiff was reportedly "[p]ositive for back pain (chronic) and limb
28 pain (left upper extremity pain)[,]" and he presented with "decreased [range of

motion ("ROM")] with neck forward flexion and lateral flexion; decreased ROM with left shoulder abduction, internal rotation, and external rotation." Tr. 1333, 1339. Plaintiff was diagnosed with "cervicalgia[,]" a "[s]prain of ligaments of [his] cervical spine[,]" and arthropathy in Plaintiff's shoulder region. Tr. 1440. Because the ALJ selectively relied on only some evidence and failed to consider or discuss the above evidence when rejecting Dr. Singer's opinion due to the waxing and waning of Plaintiff's symptoms, the ALJ's rejection of Dr. Singer's opinion for this reason was not a clear and convincing or even a specific and legitimate reason to reject Dr. Singer's opinion.

Accordingly, because the ALJ's reasons for partially rejecting Dr. Singer's opinion were not clear and convincing or even specific and legitimate, the Court finds that the ALJ's rejection of Dr. Singer's opinion was erroneous. This error was harmful because Dr. Singer's opinion constitutes substantial evidence that Plaintiff had greater limitations than the ALJ found in the ALJ' RFC assessment.

Additionally, the VE's responses to the ALJ's hypothetical question, were not supported by substantial evidence. This is because the ALJ failed to properly consider Dr. Singer's opinion that Plaintiff had greater limitations than the ALJ's RFC finding provided, which, in turn, provided the improper basis for the ALJ's dispositive hypothetical question posed to the VE.

Therefore, the Court finds that remand for further proceedings is appropriate so that the ALJ may reconsider Dr. Singer's opinion and Plaintiff's RFC in light of Dr. Singer's opinion. Because the Court remands as to this issue, it does not consider Plaintiff's remaining assignments of error.

## IV.   CONCLUSION

Because the Commissioner's decision is not supported by substantial evidence, IT IS HEREBY ORDERED that the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). See Garrison, 759 F.3d at 1009

1   (holding that under sentence four of 42 U.S.C. § 405(g), "[t]he court shall have

2   power to enter . . . a judgment affirming, modifying, or reversing the decision of the

3   Commissioner . . . , with or without remanding the cause for a rehearing.")

4   (citation and internal quotation marks omitted).

5

6        IT IS SO ORDERED.

7

8   DATED: <u>12/14/2020</u>

9        HONORABLE SHASHI H. KEWALRAMANI

10       United States Magistrate Judge

21